23-3106 United States of America v. Johnathan Holt. Oral argument not to exceed 15 minutes per side. Operating Supervisor Ms. Salinas would like to introduce the law clerk arguing today. You all have had a busy week. It has been a busy week. Yes, thank you. Good morning. May it please the court. I'm Melissa Salinas. I'm a law professor at University of Michigan Law School and I have the honor of introducing Ashley Munger and we really appreciate the court allowing the students to present these arguments. Thank you. Good morning, your honors. May it please the court. My name is Ashley Munger and I represent Mr. Johnathan Holt. I'd like to reserve two minutes for rebuttal, please. Thank you. This morning I'll discuss the Eighth Amendment and procedural reasonableness issues that are before the court in this case. Mr. Holt is a paraplegic man with severe care-intensive health conditions who is serving a sentence for a crime he committed as a learning disabled juvenile. Mr. Holt received a resentencing under Miller v. Alabama to remedy the unconstitutionality of his original sentence of mandatory life for that childhood crime. But rather than vindicate Mr. Holt's Eighth Amendment rights, the district court for a second time condemned him to die in prison. This time before he could even understand key information used at the hearing. Today, Mr. Holt asked this court to vacate that sentence and remand for resentencing on Eighth Amendment grounds and on grounds of procedural unreasonableness. I'd like to start with the Eighth Amendment issue. Mr. Holt's sentence violates the Eighth Amendment is cruel and unusual for two reasons. First, the district court failed to meet the fundamental mandate of Miller because it fashioned a sentence that does not reflect the mitigating impact of youth. And second, so doesn't Miller only say that mandatory life without parole is a violation of the Eighth Amendment? And the district court did remedy that because the district court recognized that this was a discretionary resentencing. That was the entire point of the resentencing. So especially in light of Jones, why doesn't just the mere fact that there was a discretionary resentencing satisfy Miller? Well, Your Honor, I'd like to make two points. First, Miller requires more than simply to acknowledge that mandatory life is not required for juveniles. So Eighth Amendment doctrine makes clear that a sentence cannot be grossly disproportionate to the crime committed. We get that from cases like Harmelin. But Miller says that when we apply that rule to children, we have to keep in mind that children are constitutionally different from adults for the purposes of sentencing. And it's not enough to simply acknowledge that life in prison is not mandatory for children. Miller requires that a court fashion a sentence that reflects the mitigating impact of youth in a specific case. The Supreme Court tells us in Montgomery that, quote, even if a court considers a child's age before sentencing him or her to a crime, it still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity. What do you do with Jones, though? Jones, I thought, I think I'm getting the name right, I hope. Yeah. Jones suggests that a district court doesn't have to make any findings. It really doesn't have to do much of anything as long as it's a discretionary decision. Your Honor, Jones says that a trial court, that's a court, or that's a case from a state court, but it says that a trial court doesn't have to place a finding of permanent incorrigibility on the record explicitly or implicitly before sentencing a juvenile to life without parole. But Jones itself does say that handing down that sentence to a child should be exceedingly rare, and it's in no way disturbing Miller's requirement that, which mandates that a sentencing court follow a certain process, which is considering an offender's youth and attendant characteristics before imposing a life sentence. The district court here did not acknowledge or did not inquire after or analyze the possibility that Mr. Holt's crime reflects that unfortunate yet transient immaturity that the Supreme Court cares about in Miller and Montgomery. The court spoke about Mr. Holt's crime only categorically, saying that nothing in anyone's personal history or characteristics could justify this kind of crime, signaling its unwillingness to look past the category of the offense to the mitigating impact of youth in this specific case. And if the district court had done that, had inquired after unfortunate yet transient immaturity, it would see that Mr. Holt at the time of the crime was a teenager with a learning disability requiring special education services. He was following around an older boy, Mr. Lance Reynolds, who was in his twenties. And during an attempted robbery at the direction of Mr. Reynolds, there was a scuffle, a gun went off, and tragically, Mr. Battle lost his life. But this is a tragically misguided child. It's not a monster. The court didn't inquire after any of that, though. It didn't consider any of those facts or really do any analysis of youth's mitigating impact at all. That's the core of the Miller problem here, that lack of case-specific inquiry. And I'd like to move now to the second reason that Mr. Holt's health makes each day in prison more burdensome for him than for an able-bodied person. But the court still chose to impose an effective life sentence for a crime that Mr. Holt committed as a juvenile. The court knew that Mr. Holt had been hospitalized repeatedly, at least a dozen times, for life-threatening infections. The reality of being paraplegic in prison is that you don't move. And sitting in one place or laying in bed for extended periods of time has caused open wounds on Mr. Holt's pelvis, his sacrum, his legs, and his feet. And those wounds have become septically infected, life-threateningly infected. Is it your position that no paraplegic can be sentenced to prison? No, Your Honor, but Mr. Holt has a confluence of factors here. Mr. Holt is a paraplegic with a learning disability. He requires around-the-clock care. He requires catheterization four to six times daily, rectal stimulation, and a suppository or an enema every one to two days. He has a hard time maintaining his own hygiene. Medical professionals routinely find feces in his open wounds. Infections are spreading to his bones. What Mr. Holt's counsel at the re-sentencing hearing asked the court to consider was that each day in prison is more burdensome for Mr. Holt than for an able-bodied person. Why, if you think that his, usually these types of claims are brought in, well habeas is civil, but 1983 claims, so you cite Estelle for the principle of deliberate indifference. The reason they're brought in 1983 is because it's not the sentence that is invalid, it's just the way it's been implemented. And to give him the appropriate care. But I think if you bring it this way and habeas or on direct appeal from a sentence, you have to show substantially more than you would for your deliberate indifference claim. You'd have to show that the sentence itself is invalid, such that there's essentially no way the Federal Bureau of Prisons could fix this problem. And so I guess I question why you're not saving this claim for a 1983 proceeding where you can ask for, if you think his care is inadequate, ask for them to fix it. Your Honor, the Eighth Amendment provides a stand-alone obligation to a sentencing court. In the sentencing context, the Eighth Amendment standard is that a sentence cannot be grossly disproportionate to the offense might mean. Estelle says that sentences can't be barbaric or undignified. And counsel here repeatedly asked the court to consider the reality of Mr. Holt's prison life so that the sentence wouldn't be so long as to reach that level of being undignified and barbaric. But again, the court took a categorical and merciless approach to sentencing for crimes like Mr. Holt, saying only that I empathize with Mr. Holt that he is in this precarious physical condition, but he killed a man. I'd like to switch gears and talk about procedural reasonableness. Mr. Holt's sentence is procedurally unreasonable because he was repeatedly ignored, silenced, and stripped of agency when he and his attorney attempted to make themselves heard at the resentencing hearing. And there are two specific errors that merit reversal here. First, Mr. Holt was ignored and steamrolled when he tried to tell the district court that he had not read or understood the PSR. This not only violated Rule 32 I1A, but it led to other deficiencies in the proceedings. And second, the district court ignored and steamrolled Mr. Holt's plea for it to consider his acute health conditions and medical needs, misunderstanding its discretion to consider those exact things, and instead summarily dismissing Mr. Holt's argument as insignificant. As to the first error, the court violated Rule 32 I1A by failing to ensure that Mr. Holt had an opportunity to read and discuss the PSR with his attorney. Mr. Holt said multiple times he didn't have the opportunity to read the PSR. He said that no fewer than six times. If we take Mr. Holt's counsel as relaying exactly what happened, Mr. Holt, she finally says that that they had spoke on the phone briefly twice after he had the PSR, and she asked him if he quote, had any issues or anything, but that quote, time was kind of of the essence and the call was cut short. Mr. Holt confirmed that they had only discussed one or two things briefly, but that he didn't understand them. Do you concede that this is, that plain error review applies to this claim? No, Your Honor. Abuse of discretion review applies to this claim because Mr. Holt stated no fewer than six times that he had not read or understood the PSR, and the court pressed on anyway, and so for those reasons, because it was raised below, it's an abuse of discretion standard here. What was the harm? So usually you think if you didn't understand the PSR, then you follow up by saying this was harmful because I would have raised this objection to the PSR, and I wasn't able to raise it. It's not obvious kind of what you are saying he would have said if he had further digested the PSR and understood it. What would he have, like is there some fact in the PSR that he would have objected to? Is there some other thing in the PSR that he would have said was wrong? There are material differences between the original PSR and the updated PSR used for the resentencing, Your Honor. Those differences include updates about Mr. Holt's physical condition, updates about his programming he's been involved in in prison, his prison disciplinary record, and from that error of not allowing Mr. Holt a full opportunity to read that PSR, we had deficiencies in his allocution and in his ability to make factual disputes. That's my point, but you say that there deficiencies in his allocution, but what would he have said? It's hard to know exactly what Mr. Holt would have said. He tried to make a blanket objection to quote everything in the PSR, but he didn't read the document, so the fact that he wasn't able to present an allocution at all, wasn't able to make factual disputes at all, is the core of the problem here. And quickly, as to the second procedural error, the district court misunderstood its discretion to consider Mr. Holt's serious medical conditions in its sentencing decision, which Mr. Holt's counsel raised repeatedly at the hearing, and we have cases like Musgrave that validate the consideration of health conditions and the BOP's ability to provide care, but the court refused to do so. Thank you, Your Honor. May it please the court. In light of the court's questions, I'll start with Miller and then move to the medical and procedural questions. Judge Murphy, you are correct that Jones ends the Miller analysis here. What all Miller requires under Jones is that the district court has discretion to consider youth, and here the court, of course, recognized that it has discretion to consider youth and impose a below-life sentence, and that enough is to end the Miller inquiry. And, of course, the court did consider youth. I believe Appellant mentioned that he didn't do any analysis of youth at all, but he specifically talked about possible peer influence and maturity and applied them to the murder here and weighed them against the seriousness of the offense. Do you think it matters that Jones was out of state court? I do not. Maybe as a part of our supervisory power, we could suggest that courts should be more diligent in the inquiry? As a constitutional analysis, it does not matter. In some other contexts, the court could potentially create a rule that encouraged a different discussion, but in this context, not. For the Eighth Amendment medical claim, you were also correct. This is the type of thing that's traditionally a civil claim, and it could also be raised in the context of a compassionate release motion. There are several problems raising it here, apart from the fact that they haven't presented any authority for bringing it up in the sentencing context. One is that they don't have any actual medical evidence. What we're looking at are statements from his mother to the probation department. In the civil context, you would traditionally have testimony from doctors about required medical care and what he did and didn't receive. I was a little confused by this. This most often comes up in the death penalty context, where there's the debate between whether you can pursue a claim challenging an execution protocol under 1983, or whether you have to bring it in habeas, or I would say the criminal proceeding. I suppose one theory would be just the sentence to prison itself. If the sentence to prison itself is a violation of the Eighth Amendment because of his condition, that the prison sentence itself violates the Eighth Amendment, wouldn't that be conceivably possible to be brought in the Eighth Amendment? It would just be a very broad claim that one day in prison would violate my constitutional rights because I'm a paraplegic. So it's a potentially interesting question about whether you could bring up an Eighth Amendment claim. I'll talk about that. Certainly here is not the case where we need to decide that. You would, as a threshold matter, need medical evidence. I'll mention, too, why the facts here are not suitable for that. I think there are several difficulties with dealing with it in the sentencing context, as opposed to a civil claim or compassionate release. One is that the sentencing context tends to deal with guilt or innocence rather than the nature of the prison sentence. In the compassionate release context or the civil claim, you have compassionate release. You have the prison dealing with it first, so you have a record of what they've dealt with or not. You have the potential of remedies for the specific complaints or damages. Here, he's looking at, would have to argue, something related to the fact that, going forward, the BOP could not provide adequate care. It's correct that the defendant did not seek an evidentiary hearing in connection with it. It did not, correct. It would have been possible that, had he done so, the district court would have granted it, and there could have been a robust evidentiary record about his difficulties with being in prison, correct? You are correct that there is no evidentiary record. There was no request for a hearing. All we have are these statements by his mother to probation. It's not as if these statements aren't consistent with the other facts. I mean, do you do you challenge that these statements that he needs this level of care and what they have to do? No, certainly not. I think most of the statements about the level of care that he receives reflect the fact that he's received that care. So when they list all of these things that he needs, there's also a list in the PSR of all of the medications that he's on, the treatments that he's received. When you narrow down the facts here, we're looking at a bedsore and a potential bedsore created by the fact that he didn't have a cushion on his chair, proper foot rests, or an air mattress. And he received treatment for them at Duke Medical Center. There's no evidence that those couldn't be provided. There's no allegations of future inability to provide those things. It's really a narrow claim. So that is not a problem of constitutional dimensions. I think it would have made a difference if he had gotten a medical expert to opine that the type of care he needs just cannot be provided in the prison context. You know, if he were limited to the facts here, you know, I don't think that would make any difference, particularly if it's limited to the facts here. You know, and I don't think that's something a doctor could say. We're talking about his specific allegations are that he had the medical equipment and now doesn't. So even if a doctor were saying that, I think, you know, to me, that makes it obvious why this is more appropriate for a civil claim. That's the kind of thing where he could say, look, I had an appropriate wheelchair. I don't. I need damages for that. But even under a civil claim, he would have some trouble because he's not alleging here that they refused to provide that. And there is evidence or there's statements in the PSR about refusing care, you know, failure to self treat his wounds, failure to ameliorate the pressure by doing other things. So even, you know, medical, no medical evidence is one problem. But even if the medical evidence said exactly what the PSR said, it's limited to a minor violation that's not of constitutional dimensions. It's in the past. It's not about future remedies. I think there's a number of problems. One question I had is, I'm not, so this wouldn't be 1983 because it's the federal government, is a Bivens, what would be the civil analogy to 1983? A Bivens claim against a prison official. So the court has not, the Supreme Court has kind of been skeptical of Bivens in recent years. Has Bivens been extended to this context? Your Honor, I'm not sure. Because if not, then that would suggest you might. Would it just be an administrative remedy at that point then? You mean compassionate release or an internal? So compassionate release is for sure available. There obviously are within BOP requests. But I do believe, and I apologize for not having a citation for you, I do believe the Bivens claim covers this. And, but I'd be happy to supplement the record with an appropriate site. And so I, what about the procedural reason this claim? If you, if you look at the transcript, based upon what he says, I don't, I honestly don't get it. I mean, I was a trial judge a long time ago, but I don't understand why there was, the judge didn't take a let him discuss the PSR with counsel. I mean, there was reason to believe, there was good reason to believe that they hadn't had the full discussion that he's entitled to. Your Honor, I think on appeal, the main question here is whether it would have made any difference. And they didn't, in their brief or here, indicate any argument that he would have made had he read the PSR. And it would be difficult to do so. There's seven new paragraphs, all of which were cited by his attorney below and were discussed by them on appeal. They concerned issues that his attorney brought up during the hearing. So, you know, the ability to show what they would have done differently is directly contravened by the record, even if they had said what he would have done differently. And what about the other argument? I mean, basically, the judge said, youth doesn't make a difference here, right? You took another life, youth is no excuse. How does that show that he, I mean, can you say, I know I have discretion, but youth doesn't make a difference, and therefore, I'm not factoring it in? Your Honor, I think an important factual distinction, he, in their brief, they suggested that he said, youth doesn't, isn't a mitigating factor. He said, youth doesn't justify this. In fact, he didn't even say youth doesn't justify this. He said, an individual's circumstances doesn't justify that crime. So the word justify indicates make right. It indicates that it doesn't equal out or zero out the seriousness of the crime. But of course it doesn't. I mean, but I don't, I think that's a strong man. The question has to do more with culpability, rehabilitation, the ability to make better decisions. It has to do with a lot of factors, not, it's not, no one says it's a justification. Right. Well, in the context of that hearing, she was requesting, she appeared to be requesting a zero prison time sentence. And so that was his response to that. And then later in the hearing, he did discuss specific characteristics of youth, even though they, Holt's attorney hadn't raised them. So he discussed the potential to be influenced by peers and the fact that he had, was committing this crime among other people and express sympathy for that, express sympathy for his upbringing. In the original sentencing hearing, he discussed a number of factors as well. He's been living with Holt and his defendants in this 17 defendant trial for a long time, is very familiar with him. Discussed at length his maturity and how that could have led him to not commit the crime. But weighed that against the fact that this is a murder. He's a trigger puller. He shot a man at close range. It was his decision to go into the house. Reynolds, the short North Posse member, suggested that his friend go in and come back out. And Holt said, no, I'm coming in after you. He had committed a number of robberies before in which he threatened to kill people. So Judge Marbley weighed that expressly, his youth, how that might have influenced him against this seriousness of the offense. So just turning to another claim, your friend on the other side suggests that the district court did not adequately take into account medical care. And I'm pointing to one statement where the court rejected medical care as not significant for it to consider in the sentencing paradigm. Don't you think it would be significant to at least consider that in the discretionary 3553A? I do. And at the end of the hearing, when he was doing his 3553 analysis, he did consider it. That question, I think, was taken out of context or that statement. In that colloquy, he was again and again asking the attorney whether she was asking for a zero prison time sentence. And I believe whether she had authority for considering this at the sentencing stage. And she responded, well, it's usually civil. So that context was, are you genuinely asking for a zero prison time sentence? And do you have authority for considering it in this context? And that's sort of underlined by the fact that later on, he specifically cited the 3553A medical factor, and then applied it and discussed the medical care that he would receive in prison, and the fact that he had a right to receive the same medical care as someone who had not committed murder. So of course, it's something that the judge should consider and did. Unless there are no further questions. Thank you. All right. Munger. Your Honor, during my brief rebuttal, I'd like to make three points. First, the district court here said that, quote, nothing in anyone's personal history or characteristics could justify the type of crime that was committed here. That's a per se view, saying that any child who committed this crime would receive the ultimate sentence of being condemned to die in prison. That directly contravenes Miller. And even in its cursory discussion of youth later on, the court analyzed not whether the offense reflected that unfortunate, yet transient immaturity, but whether youth justified the offense, made it okay. Are we on the same page about what the word justify means? I don't think youth would make a murder right. Certainly not, Your Honor. It's an extenuating circumstance, but if that's all the court was saying, that doesn't seem problematic to me. The problem is that it's not followed up with any analysis of the mitigating impact of youth. Certainly, a murder is never okay, but to say that approaching youth with mercy is akin to exonerating Mr. Holt, that's not enough to satisfy Miller. That's a distortion of what Mr. Holt was asking and of what Miller requires. Second, as to the medical concerns, the issue is not about what level of evidence we have, although it's certainly more than one bedsore. Mr. Holt is lying in bed for extended periods of time with his skin rotting underneath him and the infections are degrading his bones. But the court said it didn't have authority to consider the medical treatment at sentencing. It said what his stay has been like at the BOP is not significant. That's flatly false and it's a procedural error. Lastly, Rule 32 requires literal compliance. It's a procedural right for Mr. Holt to say what that conversation with his attorney would have entailed would be to go outside the record. And so we ask for all of these reasons that you vacate and remand. Thank you. We appreciate very much the argument both of you've given. We'll consider the case carefully and we are always glad to have the students. And as I've said previously this week, their fine performance gives us hope for the future of the legal profession. Thank you.